UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>  Plaintiff,<br><br>v.<br><br>COUNTRY CLUB RETIREMENT CENTER V, LLC, HOLLAND MANAGEMENT, INC., AND HOLLAND MANAGEMENT HZ, LLC,<br><br>  Defendants. | CIVIL ACTION NO. 24-3997<br><br>COMPLAINT<br><br>JURY TRIAL DEMAND |

NATURE OF THE ACTION

This is an action under the Americans with Disabilities Act of 1990, as amended (ADA) and the Genetic Information Nondiscrimination Act of 2008 (GINA), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct violations of the ADA and the GINA and to provide appropriate relief to Charging Party Jenny Bailey and a class of employees.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12117(a), and Section 207(a) of the Genetic Information Nondiscrimination Act of 2008, 42 U.S.C. § 2000ff-6(a), both of which incorporate by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the

jurisdiction of the United States District Court for the Southern District of Ohio, Southern Division.

## PARTIES

3. Plaintiff, the United States Equal Employment Opportunity Commission (the Commission), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I and Title V of the ADA and Title II of the GINA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), and by Section 207(a) of the GINA, 42 U.S.C. § 2000ff-6(a), both of which incorporate by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Country Club Retirement Center V, LLC has consistently been doing business in the state of Ohio, including in the city of Delaware, and has continuously had at least 15 employees.

5. At all relevant times, Defendant Country Club Retirement Center V, LLC has continually been engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7), and under Section 201(2)(B)(i) of the GINA, 42 U.S.C. § 2000ff(2)(B)(i), which incorporates by reference Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

6. At all relevant times, Defendant Holland Management, Inc. has consistently been doing business in the state of Ohio, including in the city of Delaware, and has continuously had at least 15 employees.

7. At all relevant times, Defendant Holland Management, Inc. has continually been engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7), and under Section 201(2)(B)(i) of the GINA, 42 U.S.C. § 2000ff(2)(B)(i),

which incorporates by reference Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

8. At all relevant times, Defendant Holland Management HZ, LLC has consistently been doing business in the state of Ohio, including in the city of Delaware, and has continuously had at least 15 employees.

9. At all relevant times, Defendant Holland Management HZ, LLC has continually been engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7), and under Section 201(2)(B)(i) of the GINA, 42 U.S.C. § 2000ff(2)(B)(i), which incorporates by reference Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

10. At all relevant times, Defendant Country Club Retirement Center V, LLC has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

11. At all relevant times, Defendant Holland Management, Inc. has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

12. At all relevant times, Defendant Holland Management HZ, LLC has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

13. At all relevant times, Holland Management, Inc. and Holland Management HZ, LLC (collectively, "Holland") have been owned by John Holland and his family.

14. At all relevant times, Janet Harris has been the CEO of Holland Management, Inc.

15. At all relevant times, a John Holland family company has been an owner of Country Club Retirement Center V, LLC.

16. At all relevant times, Janet Harris has been an owner of Country Club Retirement Center V, LLC.

3

17. On Holland's website, it advertises the Country Club Retirement Center (known as CCRC) facility that is located in in Delaware, Ohio, and other assisted living and skilled nursing facilities that are owned, operated, or managed by Holland.

18. On Holland's website, it advertises job openings at the CCRC facility in Delaware, Ohio and other assisting living and skilled nursing facilities that are owned, operated, or managed by Holland, and it encourages people to apply with Holland for such jobs. The Employee Handbook applied to the CCRC facility in Delaware, Ohio and other assisted living and skilled nursing facilities that are owned, operated, or managed by Holland and provided for employees to transfer from one facility to another without losing the benefits of their seniority.

19. At all relevant times, Defendants have had sufficient interrelation of operations, common management, centralized control of labor relations and personnel, and/or common ownership and financial control such that they constitute a single employer for purposes of the ADA and the GINA.

20. At all relevant times, Holland Management, Inc. and Holland Management HZ, LLC have maintained sufficient control over the employees of Country Club Retirement Center V, LLC such that they constitute a joint employer of those employees.

ADMINISTRATIVE PROCEDURES

21. More than thirty days prior to the institution of this lawsuit, Jenny Bailey filed charges with the Commission alleging violations of the ADA and the GINA.

22. On September 19, 2023, the Commission issued to Defendants a Determination finding reasonable cause to believe that the ADA and the GINA were violated and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

23. On June 11, 2024, the Commission issued to Defendants a Notice of Conciliation Failure advising Defendants that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

24. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

25. Defendants operate assisted living facilities and skilled nursing facilities and provide home health services in Ohio including, but not limited to, at the CCRC located in Delaware, Ohio.

26. Defendants have engaged in unlawful discrimination by subjecting qualified individuals with disabilities to attendance policies that violate the ADA, 42 U.S.C. §§ 12112(a) and (b)(5), and by requiring them to satisfy a 100% healed qualification standard in violation of §§ 12112(a), 12112(b)(5) and (b)(6).

27. Defendants have maintained an attendance policy that says absences or late arrivals resulting from serious medical emergencies will not be excused unless there are "extreme and compelling circumstances."

28. Defendants have maintained a 100% healed policy that says employees who are absent because of an illness for two or more consecutive days must submit a healthcare provider's statement, record, or release approving them to return to work without restrictions.

29. Defendants have engaged in unlawful discrimination, retaliation, and/or interference by using termination and disciplinary policies that discriminated on the basis of disability and eliminated and/or interfered with the interactive process and/or entitlement to reasonable accommodations. The policies permit management to exercise their discretion to invoke a termination and disciplinary process or procedure (known as the "Equity Committee"

5

process) that violates the employer's duty to engage in the mandatory interactive process, that frustrates and interferes with rights secured by the ADA, in violation of 42 U.S.C. §§ 12112(a) and (b)(5), and that constitutes unlawful retaliation and interference in violation of 42 U.S.C. §§ 12203(a) and/or (b).

30. Defendants have engaged in unlawful retaliation and/or interference in violation of §§ 12203(a) and/or (b), by requiring employees to sign and/or consent to an agreement shortening the period for filing all claims arising from violations of the ADA to six months and expressly waiving any statute of limitations to the contrary as a condition of retaining employment. Charging Party was required to do so as a condition of retaining her employment.

31. Defendants have violated the GINA, 42 U.S.C. § 2000ff-1(b), by requiring employees to provide family medical history information on a form requiring them to answer whether their family has a history of "nervous or mental illness," cancer, heart disease, tuberculosis, and diabetes and, if so, to provide a written explanation. Charging Party was required to provide such family medical history as a condition of employment.

32. Charging Party is a Veteran who has a disability. Charging Party is disabled because she has Post Traumatic Stress Disorder, which substantially limits her brain function. *See* 29 C.F.R. § 1630.2(j)(3)(iii) (post-traumatic stress disorder substantially limits brain function).

33. In December 2018, Charging Party was hired to work as a State-Tested Nursing Assistant (STNA) at the CCRC facility in Delaware, Ohio.

34. Defendant Country Club Retirement Center V, LLC owns and operates the CCRC facility where the Charging Party was hired to work.

35. Defendant Country Club Retirement Center V, LLC is the employer of the persons who work at the CCRC where the Charging Party was hired to work.

36. Charging Party was employed by Defendant Country Club Retirement Center V, LLC.

37. Charging Party also was employed by Holland Management, Inc. and Holland Management HZ, LLC (collectively "Holland") because Holland and Country Club Retirement Center V, LLC operated as a single employer or as joint employers for purposes of the ADA and the GINA.

38. During her employment at the CCRC facility in Delaware, Ohio, Charging Party was supervised by Director of Nursing Amy Hill.

39. During Charging Party's employment, Hill knew that Charging Party has PTSD.

40. During Charging Party's employment at the CCRC facility in Delaware, Ohio, the Director of Nursing was supervised by the facility Administrator, Dianne Ortman.

41. During Charging Party's employment, Ortman knew that Charging Party has PTSD.

42. During Charging Party's employment at the CCRC facility in Delaware, Ohio, the CCRC facility and the other assisted living and skilled nursing facilities that are owned, operated, or managed by Holland were supervised by Holland Director of Operations Holly Burrus.

43. During Charging Party's employment, Burrus knew that Charging Party has PTSD.

44. Burrus also functions as the Holland "Corporate Representative" at the CCRC facility in Delaware, Ohio, and at all other assisted living and skilled nursing facilities that are owned, operated, or managed by Holland.

45. As Corporate Representative, Burrus was required by Defendants' policy to preside over the termination process and procedure described above in Paragraph 29 if the Administrator was absent.

7

46. Charging Party was qualified for the position she held at the CCRC facility, with or without reasonable accommodations.

47. On or about March 17, 2021, adverse action was taken against Charging Party on the basis of disability, including because she purportedly had missed six shifts and had arrived late to work over the course of the previous year.

48. Defendants failed to contemporaneously document or otherwise support the adverse action taken, and the reasons asserted for the action taken against Charging Party was pretextual.

49. Charging Party did not engage in the alleged violations, as described above.

50. Charging Party engaged in protected activity when she opposed the action taken against her including in March, 2021.

51. After Charging Party engaged in protected activity, materially adverse action was taken against her.

52. Charging Party sought accommodation for her disability, including transition to contingent status (working as needed, casual, or PRN).

53. Charging Party was not transitioned to contingent status nor were her requests for accommodation granted.

54. Charging Party was absent from work on March 18, 2021 because of disability.

55. Charging Party was absent from work on March 19, 2021 because of disability.

56. Information was entered into the CCRC timekeeping or other system stating that Charging Party could not report to work on March 18, 2021 because she was in the hospital.

57. On March 22, 2021, Charging Party reported for work.

58. When Charging Party reported for work on March 22, 2021, she was advised that

she needed to submit a statement/record from a healthcare provider. Charging Party advised that she contact a healthcare provider to obtain the statement, as directed.

59. On or about March 22, 2021, Charging Party talked to Hill about ADA accommodations including transition to contingent status, as described above. Hill replied that she was sending Charging Party to the Equity Committee.

60. On March 23, 2021, Charging Party provided Hill with a statement/record from a psychiatrist at the Columbus Veterans Medical Center.

61. The psychiatrist's statement/record described above said that Charging Party suffered from a chronic condition.

62. The following sentence appears in the psychiatrist's statement/record: "Please consider any reasonable accommodations."

63. On March 23, 2021, Hill acknowledged that she received the psychiatrist's statement/record described above.

64. After Hill received the psychiatrist's statement/record described above, Hill scheduled the Equity Committee termination meeting to take place the next morning at 9:00 a.m.

65. The Committee termination meeting took place on March 24, 2021, consistent with the employer's policy referenced above in Paragraph 29.

66. Charging Party was permitted to attend part of the Committee termination meeting that occurred on March 24, 2021. During the part of the meeting that Charging Party attended, Charging Party engaged in protected activity by opposing action taken against her. Attendees also were on notice that Charging Party has a disability, that her disability is PTSD, that the absences and late arrivals that purportedly formed the basis for her termination meeting were caused by her disability and/or connected to PTSD symptoms, and that Charging Party sought or was entitled to

ADA accommodations.

67. During the Committee meeting or at its conclusion, Charging Party was fired.

68. At no time from March 17, 2021 to March 24, 2021 did anyone at CCRC or Defendants grant Charging Party an accommodation.

69. During her employment, Charging Party sought and/or was entitled to reasonable accommodations including, but not limited to, being excused from certain absences and late arrivals; permission to return to work after absences; schedule or job duty/assignment modifications; permission to work on a contingent basis and/or transition to such status; relief and/or exception from Defendants' attendance policies; relief and/or exception from Defendants' 100% healed policy; relief and/or exception from Defendants' termination and disciplinary policies (including the Equity Committee policies described above); relief and/or exception from the application of the above-referenced policies and the policies described above in Paragraphs 26 through 29; and accommodations that are reasonable as defined by the ADA.

70. Charging Party's employer/s was/were on notice of the need for reasonable accommodations and/or of the need for relief and/or exception from their policies, as described above.

71. The above facts, among others, demonstrate that Defendants subjected Charging Party and a class of qualified individuals with disabilities to attendance policies that violate the ADA, 42 U.S.C. §§ 12112(a) and (b)(5), and to a 100% healed policy that violates §§ 12112(b)(5) and (b)(6), as described herein and above in Paragraphs 26 through 28.

72. The above facts, among others, demonstrate that Defendants subjected Charging Party and a class of employees to discrimination, retaliation, and/or interference in violation of §§ 12112(a), 12112(b)(5), 12203(a), and/or 12203(b), as described herein and above in Paragraph 29.

73. The above facts, among others, demonstrate that Defendants retaliated against Charging Party and a class of employees and/or engaged in unlawful interference in violation of §§ 12203(a) and/or (b), as described herein and above in Paragraph 30.

74. The above facts, among others, demonstrate that Defendants violated the GINA, 42 U.S.C. § 2000ff-1(b).

75. Defendants have been engaged in the practices described above since at least 2013.

76. The effect of the practices described above has been to deprive Charging Party and a class of employees of rights secured to them by the ADA and the GINA.

77. The unlawful employment practices complained of above were and are intentional.

78. The unlawful employment practices complained of above were and are done with malice or with reckless indifference to the federally protected rights of Charging Party and the class.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining each Defendant, and each of their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from: maintaining each of the above-described policies that violate the ADA or applying the practices described in them; and discriminating, retaliating, and/or engaging in unlawful interference as described above.

B. Issue an Order compelling each Defendant to revise, reform, and/or eliminate the use of certain forms, processes, and/or practices that contributed or otherwise facilitated discrimination, retaliation, and/or interference and compel each Defendant to take action sufficient to prevent future ADA violations.

  C. Issue an Order stating that requiring employees to sign and/or consent to an agreement shortening the period for filing all claims arising from violations of the ADA to six months and expressly waiving any statute of limitations to the contrary as a condition of retaining employment is unenforceable under the ADA because it constitutes unlawful retaliation prohibited by § 12203(a) and/or interference prohibited by § 12203(b), requiring each Defendant to strike such agreements from all their materials or electronic records, requiring each Defendant to cease requiring such agreement and/or consent, permanently enjoining each Defendant from enforcing any such agreement already executed, and ordering other relief that is necessary to remedy those violations.

  D. Issue an Order requiring each Defendant to strike all forms that contain genetic information from all materials and records including electronic records, prohibiting each Defendant from using any form or system to gather genetic information, permanently enjoining each Defendant from violating the GINA, and ordering other relief that is necessary to remedy those violations.

  E. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of their past and present unlawful employment practices.

  F. Order Defendants to make whole Charging Party and the class harmed by Defendants' unlawful practices, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and/or appropriate front pay.

  G. Order Defendants to make whole Charging Party and the class harmed by Defendants' unlawful employment practices, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

  H. Order Defendants to make whole Charging Party and the class harmed by

Defendants' unlawful employment practices, by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices complained of above, in amounts to be determined at trial.

    I.    Order each Defendant to pay Charging Party and the class harmed punitive damages in amounts to be determined at trial.

    J.    Grant such further relief as the Court deems necessary and proper in the public interest.

    K.    Award the Commission its costs of this action.

JURY TRIAL DEMAND

The United States Equal Employment Opportunity Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington, D.C.

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

GWENDOLYN Y. REAMS
Associate General Counsel

s/Debra M. Lawrence
DEBRA M. LAWRENCE
Regional Attorney
United States Equal Employment
Opportunity Commission
Philadelphia District Office

s/Kate Northrup
KATE NORTHRUP
Assistant Regional Attorney
United States Equal Employment
Opportunity Commission
Philadelphia District Office

s/Jessi Isenhart
JESSI ISENART
Trial Attorney
United States Equal Employment
Opportunity Commission
Cleveland Field Office
1240 East 9th Street, Suite 3001
Cleveland, OH 44199
Jessi.Isenhart@eeoc.gov
216-306-1121